**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**GALLEON MANAGEMENT, LP, et al., Defendants.**

**No. 09 Civ. 8811(JSR).**

United States District Court, S.D. New York.

May 10, 2011.

David Rosenfeld, Sanjay Wadhwa, Valerie Ann Szczepanik, Jason Evan Friedman, Kevin Patrick McGrath, Securities And Exchange Commission Northeast Regional Of-

fice, New York, NY, Silvestre Fontes, U.S. Securities And Exchange Commission Boston Regional Office, Boston, MA, for Plaintiff.

Adam Selim Hakki, Stephen Robert Fishbein, John A. Nathanson, Shearman & Sterling LLP, Robert Henry Hotz, Jr., Samidh Jalem Guha, Akin Gump Strauss Hauer & Feld, Alan Robert Kaufman, David I. Zalman, Nicole Marie Hudak, Thomas Benjamin Kinzler, Kelley Drye & Warren, Andrew James Frisch, Andrew J. Frisch, Roland Gustaf Riopelle, Diane Ferrone, Sercarz & Riopelle, L.L.P., Frederick Lawrence Sosinsky, Law Offices Of Frederick L. Sosinsky, Adler Charles Bernard, Dornbush Schaeffer Strongin & Venaglia, LLP, New York, NY, Terence J. Lynam, John M. Dowd, William E. White, Akin Gump Strauss Hauer & Feld, LLP, Washington, DC, William R. Barzee, Barzee Flores, P.A., Miami, FL, for Defendants.

## MEMORANDUM

JED S. RAKOFF, District Judge.

On December 17, 2010, the SEC renewed its motion to compel defendants Raj Rajaratnam and Danielle Chiesi to produce to the SEC all relevant wiretapped communications in their possession. On January 5, 2011, defendants filed opposition papers in which they agreed to produce certain of the wiretapped communications and objected to producing others. The SEC filed reply papers on January 11, 2011, and the Court heard oral argument on January 21, 2011. After careful consideration, the Court issued a "bottom-line" ruling on January 31, 2011 ordering defendants to produce all of the requested communications in two phases (as well as severing defendant Zvi Goffer from the above-captioned action and setting a schedule for further proceedings in this case). Although the defendants have long since complied with the January 31 Order, a court should always state its rulings, and consequently the Court issues this Memorandum to set forth the reasons for its January 31 Order.

By way of background, on October 16, 2009, the United States Attorney's Office unsealed criminal complaints charging several

defendants, including Raj Rajaratnam and Danielle Chiesi, with securities fraud and conspiracy. *See Securities and Exch. Comm'n v. Rajaratnam*, 622 F.3d 159, 164 (2d Cir.2010). The same day, the SEC filed the instant case, charging Rajaratnam, Chiesi and others, with insider trading and conspiracy, largely on the basis of the same conduct alleged in the criminal case. *Id.* at 165; *Securities and Exch. Comm'n v. Rajaratnam*, No. 09 Civ. 8811(JSR). Two months later, Rajaratnam and Chiesi were indicted for insider trading and conspiracy, and their criminal case was assigned to Judge Richard Holwell. *See United States v. Rajaratnam*, No. 09 Cr. 1184(RJH). Meanwhile, a separate indictment arising from the same investigation and charging similar crimes was filed against other defendants, including Goffer, and this separate criminal case was assigned to Judge Richard Sullivan. *See United States v. Goffer*, No. 10 Cr. 56(RJS).

On December 23, 2009, in connection with the parallel criminal actions and pursuant to Rule 16 of the Federal Rules of Criminal Procedure and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A §§ 2510–2522 ("Title III"), the United States Attorney's Office provided Rajaratnam and Chiesi with tapes of wiretapped conversations and the corresponding electronically searchable line sheets. In turn, the SEC served demands in the instant action that the defendants produce to the SEC the tapes of the wiretapped conversations pursuant to Federal Rules of Civil Procedure Rules 26 and 34. Defendants Rajaratnam and Chiesi opposed the demands, and the SEC moved to compel compliance. Following briefing and oral argument, the Court granted the SEC's motion to compel the production of the tapes. *See* 02/09/10 Memorandum Order ("Discovery Order").

Rajaratnam and Chiesi appealed to the Second Circuit, which, on September 29, 2010, granted defendants' request for mandamus, vacated the Discovery Order, and remanded the case for further proceedings.

*See Securities and Exch. Comm'n v. Rajaratnam*, 622 F.3d 159 (2d Cir.2010). The Second Circuit concluded, *inter alia*, that "[w]hile the district court was correct that the SEC had a legitimate right of access to the wiretap materials, it could not properly balance that interest against the privacy interests at stake while the legality of the wiretaps was still unresolved." *Id.* at 187. This was a reference, in particular, to the fact that a motion to suppress the wiretaps was pending before Judge Holwell. *Id.* at 185–86.[1] On November 24, 2010, however, Judge Holwell denied the suppression motions filed by Rajaratnam and Chiesi in their criminal case and determined that the wiretap intercepts were legally obtained. *See United States v. Rajaratnam*, 753 F.Supp.2d 299 (S.D.N.Y.2010) ("*Holwell Order*").[2]

In light of Judge Holwell's ruling, the SEC, on December 17, 2010, renewed its motion to compel defendants Rajaratnam and Chiesi to "produce all relevant wiretapped communications in their possession, custody or control." *See* Plaintiff's Memorandum of Law in Support of its Renewed Motion to Compel Production of Relevant, Legally Obtained Wiretapped Communications ("SEC Mem.") at 1. The SEC also sought "copies of all corresponding electronically searchable line sheets that provide the identity of the participants in such intercepts and all draft summaries and transcripts of such intercepts that were produced to [Rajaratnam and Chiesi] by the United States Attorney's Office for the Southern District of New York ('USAO')." *Id.* Defendants filed opposition papers, to which the SEC responded, and oral argument was held on January 21, 2011, following which the Court issued its January 31, 2011 Order.

From the submissions, it became apparent that the parties were now in agreement as to at least two important issues. First, all parties agreed that they were bound by the Second Circuit's conclusion—which was also the centerpiece of this Court's prior ruling— that the SEC has a presumptive right of

---

**1.** At the time this Court granted the Discovery Order, neither of the defendants had in fact moved to suppress the wiretaps.

**2.** Similarly, Judge Sullivan subsequently denied a similar motion to suppress the wiretaps in the companion case before him. *See United States v. Goffer*, 756 F.Supp.2d 588 (S.D.N.Y.2011).

access to the wiretaps in question where the defendants have, through discovery in the parallel criminal case, already obtained this information. *See Securities and Exch. Comm'n v. Rajaratnam,* 622 F.3d 159, 180 (2d Cir.2010) ("[W]here the civil defendant has properly received the Title III materials at issue from the government, the SEC has a presumptive right to discovery of these materials from its adversary based on the civil discovery principle of equal information.").

Second, both defendants conceded that a certain number of the wiretaps were, without question, relevant to this action. For example, Rajaratnam acknowledged that he possessed approximately 240 wiretapped conversations concerning the particular securities referenced in the SEC's Amended Complaint. *See* Defendant Rajaratnam's Memorandum of Law in Support of its Opposition to Plaintiff's Renewed Motion to Compel Production of Relevant, Legally Obtained Wiretapped Communications ("Rajaratnam Mem.") at 2 n. 2, 6 n. 3. Chiesi similarly acknowledged that she had possession of an unspecified number of wiretapped conversations that related directly to trading in the four securities at the heart of the SEC's allegations against her. *See* 01/21/11 transcript. During oral argument, both defendants agreed to immediately produce these concededly relevant wiretaps to the SEC. *Id.*

There still remained three objections from the defendants. First, Rajaratnam and Chiesi argued that the SEC's discovery request was overbroad and sought to elicit information (beyond that consented to) not relevant to the claims alleged in the SEC's Amended Complaint. Rajaratnam Mem. at 10–13. Second, defendants argued that their privacy interests continued to outweigh the SEC's right of access to the requested communications beyond those consented to. *Id.* at 7–9. Third, the defendants contended that, at the very least, the Court should postpone the production of any wiretaps (beyond those defendants had consented to produce) until the conclusion of Rajaratnam's criminal trial. *See, e.g., id.* at 6.

 The Court found none of these arguments persuasive. The SEC correctly explained the relevance of each category of information requested as follows:

The first category seeks communications about the companies and stocks at issue in this action. Such communications clearly are relevant to the reasons for the trades defendants allegedly conducted, and to defendants' knowledge of information concerning the companies alleged. Defendants concede the relevance of this category. The third category seeks communications concerning the relationships between and among the defendants and their sources. Communications in this category relate to the nature and extent of their contacts, which is relevant to establishing, among other things, the confidences they placed in each other, the meaning and import of words they conveyed, and the benefit the alleged tippers and traders received, promised, or expected from the passing of information. Categories two, four, five, and six seek evidence relevant to a defense that communications regarding the trading at issue here was consistent with lawful information gathering incident to stock trading and to whether defendants' conduct with respect to these communications and the trading deviated with their past patterns and practices. Category seven is relevant to defendants' respective states of mind, i.e., whether they were aware of any investigations into their own conduct or the conduct of those they communicated with that would color the meaning of their communications, and what their respective understanding was of insider trading and the lawfulness of particular conduct.

Plaintiff's Reply Memorandum of Law in Further Support of its Renewed Motion to Compel Production of Relevant, Legally Obtained Wiretapped Communications ("SEC Reply") at 6–7. The Court totally agreed: all of the information sought is plainly relevant to the claims and defenses that may be asserted at trial. *See* Federal Rules of Civil Procedure Rule 26(b)(1). Accordingly, the Court concluded that the SEC's motion to compel was not overbroad.

■ As for the defendants' privacy interests, these were obviously less significant after Judge Holwell's determinations that the wiretaps were legally obtained, but were still not eliminated. *See Securities and Exch. Comm'n v. Rajaratnam*, 622 F.3d 159, 184–85 (2d Cir.2010) ("The fact that Title III does not impose an absolute ban on civil discovery orders of the kind at issue here does not mean that the concerns for privacy that underlie Title III are irrelevant or can be disregarded. To the contrary, we conclude that those concerns, and the evident desire of Congress to limit disclosures of the fruits even of lawful wiretapping, must be carefully weighed before discovery is ordered."). In particular defendants argued that the following three privacy interests remained at stake: "(1) Mr. Rajaratnam's constitutional right to a fair trial in the criminal case; (2) his privacy interest in communications that are not yet and may never be part of the public record; and (3) the privacy rights of innocent third parties who are not before the Court." Rajaratnam Mem. at 9.

The weight of these interests is diminished considerably, however, by the fact that all discovery in this case is subject to the Court's December 16, 2009 Protective Order. For example, paragraph 2 of the Order specifies that parties may designate as confidential "any information of a personal or intimate nature regarding any individual" and "any other category of information hereinafter given confidential status by this Court." *See* 12/16/09 Protective Order ¶¶ 2(d), (e). In its bottom-line Order, the Court authorized defendants to designate as confidential the identities of any innocent third parties whose conversations have been captured by the wiretaps. Further, defendants may designate as confidential any information of a personal or intimate nature regardless of its source. In the Court's view, this Order adequately protects the privacy interests of the defendants and innocent third parties who are not before the Court. Moreover, as the SEC points out, it appears that the defendants' privacy interests and the interests of third parties may be minimal in any event. SEC Mem. at 9–10. Among other things, Judge Holwell rejected the defendants' arguments that the Government did not properly minimize the interceptions. Holwell Order at 67.

Furthermore, several of the privacy interests identified by the defendants were bound up with defendants' request to postpone further discovery until the conclusion of Rajaratnam's criminal trial. Now, of course, that request is moot. But the interests it sought to protect at the time of the January 31 Order were, again, adequately protected by the Court's Protective Order, which limits the disclosure of all confidential discovery material to the parties and their counsel, witnesses and experts who sign non-disclosure agreements, and the Court and its support personnel. *See* 12/16/09 Protective Order ¶ 5. The production of these materials to the SEC could therefore have had no effect on Rajaratnam's right to a fair trial. Similarly, although defendants have a privacy interest in the remaining communications, this interest cannot shield defendants from the disclosure of relevant, legally-obtained wiretaps to plaintiff and its counsel.

■ Moreover, even if the Court were to assume, *arguendo*, that the Court's protective Order does not entirely eliminate privacy concerns, whatever privacy interests remain after the denial of defendants' suppression motion and the Court's promulgation of its Protective Order had to be balanced against the SEC's weighty interest in obtaining the wiretaps without further delay. As the Second Circuit explained, the SEC has already suffered and continues to suffer prejudice as a result of defendants' unilateral access to the wiretaps:

[Defendants'] unilateral access to this information in preparing for trial would surely be prejudicial to the SEC, because, even if [defendants] do not use any of the recordings at the civil trial, they could still use the materials in preparation for trial-for example, by preparing to cross-examine witnesses at deposition or at trial, by attacking the credibility of witnesses, or by deciding how to structure their defense. Placing the parties on a level playing field with respect to such functions is the very purpose for which civil discovery exists.

For this reason, we find that the SEC's right of access is significant.

*Rajaratnam,* 622 F.3d at 182. Having set a firm and fixed trial date of August 22, 2011, the Court concluded that any further delay, even until the end of Rajaratnam's criminal trial, would cripple the SEC in its trial preparation, given that it would take months for the SEC to review the thousands of conversations at issue, whereas the defendants had already had access to these voluminous materials for over a year. Accordingly, the Court concluded that the SEC's right of access to the wiretaps significantly outweighed defendants' remaining privacy interests.

The Court also considered defendants' other arguments and found them without merit. Accordingly, the Court issued, and now reaffirms, its January 31, 2011 Order granting the SEC's renewed motion.